**Edmond Leon LEOPARD, Appellant,**

v.

**The STATE of Texas, State.**

**Nos. 2–81–157–CR, 2–81–158–CR.**

Court of Appeals of Texas,
Fort Worth.

June 9, 1982.

Griffin, Shelton & Eames, and Robert N. Eames, Denton, for appellant.

Jerry Cobb, Dist. Atty., Denton, for State.

Before HUGHES, HOLMAN and RICHARD L. BROWN, JJ.

## OPINION

HUGHES, Justice.

By two separate indictments Edmond Leon Leopard was charged with driving his vehicle while intoxicated and, while doing so, colliding with a vehicle occupied by two women, causing the two women to be burned and killed. A jury found appellant guilty and assessed his punishment at 10 years confinement and a $5,000.00 fine for having caused the death of Lisa Vineyard; 20 years confinement and a $10,000.00 fine for having caused the death of Karen Goodrich.

We affirm.

Appellant's sixth ground of error is that the trial court erred in denying appellant's counsel the right to a full voir dire examination of the jury panel with regard to appellant's exercising his right not to testify.

The trial court had granted a defense motion to prohibit the State from examining the jury panel on the appellant's right not to testify. During appellant's voir dire examination his counsel stated to the jury panel, without objection by the State, "in a criminal case the Defendant does not have to testify, and you cannot consider that for any purpose. Does anybody feel like that the State has put on their side of the case, feels like they have to hear the Defendant's side of the case? Does anybody feel that if the Defendant does not testify, they could not reach a fair verdict?" The jury panel was silent.

Later in the voir dire appellant's counsel again asked the jury panel if any one of them would hold it against the appellant if he did not testify. One juror responded, but it is not clear as to how she responded. No bill of exception is found in the record. The State's counsel then objected to an inquiry of the juror on two grounds: (1) the granting of the defense motion in limine was mutually binding on the defense as well as the State and (2) the jury had already been questioned in regard to the appellant's right not to testify. The trial court sustained the State's objection on the ground that the defense motion in limine had been granted.

■ It is important that defense counsel had inquired of the veniremen and received no response as to whether any one of them would be unable to render a fair verdict if the appellant did not testify. At that point appellant had freely ascertained the feelings of the veniremen. At the point that the State objected, appellant was making a second inquiry. Duplicitous questions may, within the court's discretion, be limited to curb the prolixity of voir dire. *Bodde v. State*, 568 S.W.2d 344 (Tex.Cr.App.1978). Although a venireman did respond the second time the appellant's right not to testify was inquired about, we have no basis upon which we can determine whether error was committed in regard to that juror. No bill of exception is shown. We do not know what her response was or would have been. We overrule the sixth ground of error.

Appellant's second ground of error is that the trial court erred in admitting into evidence, over timely objection, blood drawn from appellant and the results of tests conducted thereon, because such evidence was the result of a warrantless search and seizure conducted without appellant's consent.

It was held in *Smith v. State*, 557 S.W.2d 299 (Tex.Cr.App.1977) that, absent consent freely and voluntarily given, a defendant may not be subjected to a blood test under Texas law, search warrant notwithstanding. Of course, the burden is upon the State to show by clear and convincing evidence that the consent was freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority.

There is in evidence a consent form bearing appellant's signature in which it is stated that he voluntarily gave a specimen of blood to the police. The uncontradicted testimony was that appellant said he would take any test. He was thereafter given a consent form which was read to him and which he was given an opportunity to read. The consent form was also explained to him. He signed the form with no indication that he did not want to do so.

A Dr. Biggers drew appellant's blood. He testified that he asked appellant if it was alright for him to take blood and appellant said it was. Dr. Biggers drew enough blood for the police to have a sample and had begun to draw a sample for the hospital when appellant said that enough blood had been taken. When appellant said this, no more blood was taken. It is the first sample which was admitted into evidence.

■ We hold that when the first blood sample was taken, it was taken with appellant's consent freely and voluntarily given. We overrule the second ground of error.

■ Appellant's third and fourth grounds of error are that the trial court erred in rendering judgments of conviction in both causes of action because there was insufficient evidence to prove the identities of the deceased victims as Karen Goodrich and Lisa Vineyard.

The charred bodies of the deceased victims were found in a 1966 Mustang bearing the Texas license number "GTP 289". The father of Karen Goodrich, Paul Goodrich, had a passenger car bearing the license number "GTP 289" registered in his name. He testified that this passenger car was a 1966 Mustang and Karen Goodrich was the primary driver of the car on the date of the accident. Mr. Goodrich last saw his daughter alive on the date of the accident. She was leaving to go to Lisa Vineyard's sister's house for dinner when he saw her last. She left in the 1966 Mustang.

Cathy Campbell, a friend of the two decedents, testified that she last saw the two decedents on the date of the accident. Her testimony was that the two decedents left her house in Karen Goodrich's Mustang at 9:45 p. m. on the date of the accident. The two were on their way to Lisa Vineyard's sister's house. Ms. Campbell testified that Lisa Vineyard's sister lived in "The Colony".

Officer Michael Carroll testified that the accident occurred near "The Colony". He arrived at the scene of the accident "somewhere between 10:30 and 10:45", after the accident had occurred.

A funeral director, Bill Dalton, testified that he went to the scene of the accident and took the victims from there to the funeral home for identification. He removed articles of jewelry from one of the bodies. His testimony was that the victims were so charred that he could not determine their sex until he studied them at the funeral home.

Mr. Goodrich was able to identify the jewelry removed from one of the bodies as belonging to his daughter because she had always worn that jewelry. He had given her the rings himself.

A justice of the peace performed an inquest. He testified that a police officer had given him two partially burned driver's licenses. Those driver's licenses belonged to Karen Goodrich and Lisa Vineyard.

No one has seen or heard from Karen Goodrich or Lisa Vineyard since the date of the accident.

We hold that the evidence, circumstantial in nature, was sufficient to exclude every reasonable hypothesis other than that the two decedents were Karen Goodrich and Lisa Vineyard. We overrule the third and fourth grounds of error.

Appellant's fifth ground of error is that the trial court erred in allowing allegedly prejudicial jury argument by the prosecution which contained harmful matter outside the record.

During the State's closing argument the following transpired:

"MR. COBB: [for the State] I also recall the nurse sitting in this witness chair and telling you that on August the 1st when she talked to the Defendant in the jail that he told her that he was taking pain pills the night before.

MR. CLANCY: I object, Your Honor, that's a misstatement. It's outside the record, there was nothing about any pain pills being taken.

MR. COBB: I submit to you that that is what she said.

EDMOND LEON LEOPARD: That is not what she said.

THE COURT: Ladies and gentlemen, you will recall the evidence from the witness that they are speaking of.

MR. COBB: I will further direct your attention to the definition of intoxication in this Charge: 'The word intoxication, as used herein, means that a person charged does not have the normal use of his mental or physical faculties by reason of the voluntary introduction of any substance into his body.' There is no requirement that that substance be alcohol or anything else, just any substance that would require or would cause intoxication.

MR. CLANCY: Excuse me, Your Honor. I am going to object. That's outside of the record, there is nothing in the record that any other substance was taken by the Defendant except alcohol. Now, he's saying it could be something else."

Appellant's last objection was not ruled upon.

■ Defense counsel must obtain an adverse ruling upon objections to preserve error. *Nastu v. State*, 589 S.W.2d 434 (Tex. Cr.App.1979) *cert. den.* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862. A reminder that the "jury will recall the evidence" is not an adverse ruling. *Mayberry v. State*, 532 S.W.2d 80 (Tex.Cr.App.1976). No error was preserved. We overrule the fifth ground of error.

Appellant's first ground of error relates to the punishment stage. It is appellant's contention that the trial court erred in ad-

mitting evidence of appellant's juvenile conviction over appellant's timely objection.

On direct examination appellant testified as follows:

"Q. All right. Tell the Jury exactly what your record is as best you can recall?

A. It dates back to the time I was a youngster. I have received several different sentences for various different charges, I don't deny it. Yet I will say this much, I was released in August of '77—

Q. Is that when you were released from your life term that you were given?

A. Yes."

When the State cross-examined appellant, this exchange took place:

"Q. Well, let me ask you this way, were you convicted in 1947 in Fort Knox, Kentucky, for the felony offense of grand larceny and sentenced to two years confinement?

A. I was in the Army at that time and I was a minor.

Q. I didn't ask you that—

A. I was fifteen years old.

Q. —I asked you if you were convicted.

A. And if you want my juvenile record, yes, I will put that in there.

Q. Were you convicted?

A. Yes, I was.

Q. All right. And were you also convicted in 1950 in the State of Oklahoma for the felony offense of burglary—

MR. CLANCY: Your Honor, I'm going to object—

Q. —and sentenced to—

MR. CLANCY: —Your Honor, I am going to object to the juvenile record being introduced into evidence at this time.

MR. BAYS: Your Honor, that question is asked in good faith. It is not a juvenile case, there was a convening of a general court-martial in—

THE WITNESS: Look at my birthdate and see if I was not a juvenile.

THE COURT: Wait just a second now. I have got something to rule on.

Your objection is to the first conviction that Mr. Cobb just went through, the 1947.

MR. CLANCY: That's a juvenile conviction, Your Honor, at age fifteen. A juvenile conviction is not admissible against anyone after they turn eighteen and I will object that it is extremely prejudicial.

THE COURT: All right. Let me hear from the State.

THE WITNESS: Let him put it in, Mr. Clancy, it doesn't make any difference.

MR. CLANCY: Your Honor, I would like to preserve my objection.

THE WITNESS: All right, sir.

BY MR. COBB:

Q. What is your birthdate?

A. 8–1–'31.

MR. COBB: I have nothing to say about it, Your Honor. I think it is admissible.

THE COURT: Well, I am going to overrule the objection."

It is apparent that appellant himself first introduced his juvenile record on direct examination. Thus, no error is shown. *Marshall v. State*, 471 S.W.2d 67 (Tex.Cr. App.1971). Furthermore, when the State was conducting its cross-examination, appellant's counsel did not object at the first opportunity. *Martinez v. State*, 504 S.W.2d 897 (Tex.Cr.App.1974). It also appears that appellant himself acquiesced to the admission of the evidence. We overrule the first ground of error.

We affirm.