Betty Lynn SULLIVAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–82–0118–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 30, 1984.

Rehearing Denied Sept. 20, 1984.

Glen Van Slyke, Bobby H. Caldwell, Houston, for appellant.

Ray Elvin Speece, Houston, for appellee.

Before EVANS, C.J., and BASS and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

A jury found appellant guilty of felony criminal mischief and assessed her punishment at two years confinement. An active supporter of the Revolutionary Communist Party, appellant allegedly spray-painted upon a wall of the Exxon Building in Houston the following message:

Fly the Red Flag
Red, White and Blue—We Spit on You!
May 1st, 1982

Six grounds of error are presented.

Appellant's first ground of error urges that the trial court erred by restricting her jury voir dire so severely that her attorneys were unable to intelligently exercise peremptory challenges. She argues that the court prevented inquiry as to the effect on potential jurors of anticipated inflammatory evidence relating to her political beliefs and activities.

The State urges that appellant's ground of error is multifarious in complaining of the court's limitation on both the terms and the scope of voir dire. Nevertheless, we are able to understand her contentions as relating to the single question of whether appellant was denied the right to the effective exercise of her peremptory strikes, and we will address the various sub-issues grouped under this heading. Tex.Code Crim.P.Ann. art. 40.09(9) (Vernon Supp. 1982–1983).

The court reporter's notes indicate that voir dire was already in progress when the recording began, at which point the trial

judge was asking whether any of the veniremen were acquainted with the appellant, her attorneys, or the State's attorneys. There was no response. The judge read the indictment and asked if any of the panel had knowledge of the case. Again, no prospective juror responded. He then informed the panel of the defendant's right not to testify and discussed the jury's role as factfinder.

Appellant's counsel's own voir dire, while somewhat repetitive of the State's, focused upon the presumption of innocence and the difference between a preponderance of the evidence and proof beyond a reasonable doubt. Counsel inquired of the panel as a whole whether anyone was acquainted with four of the prosecution witnesses seated in the courtroom, and received no response. A large portion of his voir dire was devoted to questioning of individuals who had experience, or had relatives or friends with experience, in law enforcement.

Appellant's counsel attempted twice to inform the panel of the content of the message spray-painted on the building in order to ascertain whether any juror would be influenced by its political implications. The court sustained the State's objections each time, saying "I don't want this message given to the jury." Appellant's counsel then sought to determine whether prospective testimony by a peace officer about prior dealings with appellant in connection with her activities as a supporter of the Revolutionary Communist Party would affect anyone's ability to weigh the evidence. Again, the State's objection was sustained, and counsel was warned that he had one minute remaining.

The court then permitted, over the State's objection, the following question:

Is there anyone on the jury who feels that you might have some difficulty sitting in judgment on the case of a woman who is accused of this instance of criminal mischief who is a supporter of the Revolutionary Communist Party?

No veniremen, including three who were asked individually, answered that such political activity would influence their deliberations. Appellant's counsel next asked whether appellant's belief in communism and her opposition to capitalism would affect her credibility before the jury if she were to testify in her own behalf. No veniremen responded.

The court informed defense counsel that his time was "up." Counsel thereafter dictated a bill of exceptions consisting of thirty additional questions he would have asked members of the panel as a whole and individuals, if necessary, (1) to determine bias or prejudice on account of appellant's political beliefs or activities, which he stated he anticipated would be part of the evidence presented by the State, and (2) to determine whether jurors had "heard anything either by hearsay or otherwise and formed a conclusion as to the guilt or innocence of the defendant." The court qualified the bill by stating that defense counsel made no objection when each side was advised, before voir dire began, that it had 45 minutes, and that the defense was given three additional minutes.

■ The State asserts that appellant's failure to secure the recordation and transcription of the entire voir dire examination precludes review of any error allegedly occurring during the voir dire. We disagree. As noted above, only a small portion of the court's preliminary questioning, if any, was not recorded, and prosecution and defense questions were shown in their entirety. *Burkett v. State*, 516 S.W.2d 147 (Tex. Crim.App.1974), cited by the State, is not controlling since the record there included only that portion of the jury panel voir dire in which "a question was asked, objection made, and the asking of the question denied." *Id.* at 150. The *Burkett* court was thus unable to ascertain whether the questions refused were anything more than a restatement of what had been already asked; no such handicap exists here.

■ Finally, the State insists the appellant may not claim she was forced to accept unnamed objectionable jurors without showing that any juror seated on the panel was one against whom a challenge

for cause existed. We disagree. Such a showing is not required to claim error in the court's refusal of questions sought to permit the intelligent exercise of peremptory challenges. *Burkett,* at 149. *Burns v. State,* 556 S.W.2d 270 (Tex.Crim.App.), *cert. denied,* 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977), cited as support, is inapposite. Appellant was entitled to voir dire to select intelligently those jurors she wished to strike peremptorily. Deprivation of that right is the only harm that need be shown. *Abron v. State,* 523 S.W.2d 405, 409 (Tex.Crim.App.1975). It is immaterial how the jurors would have answered the questions. *Mathis v. State,* 322 S.W.2d 629, 631 (Tex.Crim.App.1959).

On the merits of the issue, appellant first urges that the questions propounded, but not permitted to be answered, were proper to determine juror's attitudes toward the message painted by appellant and her prior political activities.

■ The areas which defense counsel may explore during voir dire examination are broad and may not be unnecessarily limited. *Hughes v. State,* 562 S.W.2d 857, 862 (Tex.Crim.App.), *cert. denied,* 439 U.S. 903, 99 S.Ct. 268, 58 L.Ed.2d 250 (1978). Nevertheless, the conduct of voir dire examination rests within the sound discretion of the trial court, and only abuse of discretion will call for reversal. *Clark v. State,* 608 S.W.2d 667, 669 (Tex.Crim.App.1980); *Phillips v. State,* 511 S.W.2d 22, 27 (Tex. Crim.App.1974). The trial court may therefore impose reasonable restrictions on the exercise of voir dire examination, including reasonable time limitations. *Clark.* Within those limits, the defendant may pose questions to the panel and examine individual prospective jurors upon any proper area of inquiry. *Florio v. State,* 568 S.W.2d 132, 133 (Tex.Crim.App.1978).

Although juror attitudes toward appellant's political beliefs and conduct are a proper area of inquiry, appellant has not demonstrated reversible error. The two questions appellant here sought to have prospective jurors answer were essentially restatements of the question already asked, that is, whether appellant's support of the Revolutionary Communist Party would influence the juror's deliberations. Appellant has failed to show she has been deprived of any valuable right. *Burkett,* at 149; *Grizzell v. State,* 298 S.W.2d 816, 822 (Tex.Crim.App.1956); *Pendergrass v. State,* 48 S.W.2d 997 (Tex.Crim.App.1932).

■ As to the court's time restrictions upon voir dire, the amount of time allotted a defendant for voir dire is not in and of itself conclusive of the issue. *Clark, supra,* (distinguishing *De La Rosa v. State,* 414 S.W.2d 668 (Tex.Crim.App.1967), from *Barrett v. State,* 516 S.W.2d 181 (Tex. Crim.App.1974), *cert. denied,* 420 U.S. 938, 95 S.Ct. 1148, 43 L.Ed.2d 414 (1975)). *Clark* found abuse of discretion in arbitrarily limiting defendant's voir dire examination since the questions that were asked were relevant, material, and necessary to aid the defendant in intelligently exercising his peremptory challenges, and in refusing to allow defense counsel to ask whether jurors had formed an opinion as to the defendant's guilt or innocence. *Whitaker v. State,* 653 S.W.2d 781 (Tex.Crim.App. 1983), held that a trial court's limitation of a defendant's jury voir dire to fifty minutes was not unreasonable and the defendant had shown no harm.

In the instant case, defense counsel was given 48 minutes to voir dire the panel. According to his bill of exceptions, the additional questions counsel would have asked, if permitted more time, included inquiries into prior military service; membership in veterans, patriotic or anti-communist organizations; government employment; pretrial publicity about the offense, the accused, or the Revolutionary Communist Party; the existence of any opinion as to the accused's guilt or innocence; and the credibility of a witness who is a supporter of a communist group.

■ It is apparent that defense counsel spent an inordinate amount of time expounding on general principles of law and haggling with veniremen over the presumption of innocence. While some of his

proposed questions would have been proper, others would not. During his voir dire, appellant's counsel questioned eleven veniremen, four of whom became jurors, one of whom was excused for cause, and four of whom he struck peremptorily. Having already determined that none of the panel members were acquainted with appellant or had knowledge of the case, the trial court was not obliged to permit repetition in slightly different language of questions that had already been answered. *Sanne v. State,* 609 S.W.2d 762 (Tex.Crim.App.1980), *cert. denied* sub nom. *Skillern v. Texas,* 452 U.S. 931, 101 S.Ct. 3067, 69 L.Ed.2d 432 (1981); *Brooks v. State,* 599 S.W.2d 312 (Tex.Crim.App.1979), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 1036 (1981); *Abron v. State,* 523 S.W.2d 405 (Tex.Crim. App.1975); *Barry v. State,* 305 S.W.2d 580 (Tex.Crim.App.), *cert. denied,* 355 U.S. 851, 78 S.Ct. 71, 2 L.Ed.2d 56 (1957). Nor is it error to deny further examination into an area where there has been no initial response. *Leopard v. State,* 634 S.W.2d 799 (Tex.App.—Fort Worth 1982, no pet.). Inquiries into juror's political affiliations would also have been improper in this case. *Lewis v. State,* 488 S.W.2d 740 (Tex.Crim. App.1972) (bookmaking); *Johnson v. State,* 467 S.W.2d 247 (Tex.Crim.App.), *cert. denied,* 404 U.S. 951, 92 S.Ct. 273, 30 L.Ed.2d 268 (1971) (malicious mischief). Further, it would not have been proper to permit detailed, intrusive, and unnecessary voir dire questions regarding prospective juror's political prejudices since appellant's political beliefs were not in issue, and the general subject had been inquired into. *Cf. United States v. Mendoza,* 574 F.2d 1373, 1381 (5th Cir.), *cert. denied,* 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978), (heroin prosecution; alienage was not in issue). The fact that some of defense counsel's questions were proper ones does not make the court's reasonable time limitation unreasonable. *Whitaker,* at 782.

■ We find that appellant was afforded a reasonable opportunity to test the partiality of prospective jurors, and that there was no deprivation of the right to make intelligent use of her peremptory strikes. Appellant's first ground of error is overruled.

Appellant's second ground of error challenges the State's in-court identification of her as the person seen committing the offense. She contends she was denied due process by the court's action overruling her motion to suppress identification and permitting the State's sole witness connecting her with the offense, Bob Price, to identify her at trial. She urges that there was no clear and convincing proof that Price's identification was of independent origin and untainted by an impermissibly suggestive pre-trial photo display.

At appellant's motion hearing, Price testified that he observed appellant writing on the building while he was driving his taxi past at about 3:00 a.m. on April 28, 1981; that he stopped and watched her; that she came over to the cab and asked for a ride; that when he refused she walked behind the cab, put the paint can on the parking lot, and headed toward the intersection. Price said he parked the cab, got out, took her by the arm, and wrestled her back across the street and up the stairs of the Exxon Building. There, a passing private security company guard forced him to release her, after which she fled. He testified that he was face-to-face with appellant for most of the four-minute interval at a distance of eighteen inches or less, and that there was enough illumination around the building for him to see clearly. He denied that photographs of appellant shown to him two days later had any effect on his identification of her, and swore that his recognition of her was based solely on his opportunity to observe her at the scene.

■ The State does not dispute appellant's contention that the photo spread shown to the witness Price was impermissibly suggestive. However, even where pretrial identification procedures are impermissibly suggestive, in-court testimony of an identification witness' prior observation of the accused has been held sufficient to serve as an independent basis for the witness' in-court identification. *Van Byrd v.*

*State*, 605 S.W.2d 265 (Tex.Crim.App.1980). Price's in-court identification of appellant was admissible since the record clearly reveals that his prior observation of the appellant was sufficient to serve as an independent origin for the in-court identification. Ground of error two is overruled.

Appellant's third ground of error urges that the court erred in denying her motion for a directed verdict of acquittal because the State failed to prove beyond a reasonable doubt that the damage to the building caused by the spray-painting exceeded $200.00, as required by Tex.Penal Code Ann. sec. 28.03(b)(4)(A) (Vernon 1974). She argues that there is no evidence as to the usual and reasonable cost of repairing the paint damage in Harris County on the date the repairs were made, and that the damage evidence presented is inadequate because it did not show how much of Exxon's expense was attributable to the cost of labor spent covering up the message with paper because it was "creating public attention," and how much was attributable to damage caused by the liquid applied by Exxon workers initially, which had the effect of driving the paint deeper into the porous grain of the marble wall.

James Tedford, technical supervisor for the Exxon Building, testified that, among other duties, he oversees the building's repair and cleaning; that he was aware of the costs for repairs to the side of the building from the paint damage; and that the pecuniary loss to Exxon as a result of the painting of the wall was in excess of $200. Appellant's counsel objected to the prosecutor's leading the witness, but obtained no ruling on the objection. Tedford then testified without objection that it cost $549 to repair the damage. During Tedford's cross-examination, *appellant* introduced in evidence a written memo prepared by Tedford itemizing the costs of labor and the 150 sheets of sandpaper it took to restore the wall. That exhibit showed $549.23. Tedford testified that this was the total cost for material and labor, at various wage rates, for the workmen whose cumulative 56 hours work (7 men at 8 hours each) was required to remove the spray paint from the building's marble; that there was no other cleanup of dirt or grime that may have gotten on the building before the spray painting; that the work done to the building "wouldn't enhance it; it would de-hance, if anything." To defense counsel's question: "[Y]ou're saying that part of this money could have been spent, if it was spent, with doing something else?", Tedford answered, "No sir, it could not have been." Tedford further testified that the hours included in the itemization were only those related to the removal of the paint, and not for initially covering the painted message.

■■■ Appellant's complaints about the manner of proof of monetary loss were waived by failure to object at the time the testimony was introduced. *Brown v. State*, 640 S.W.2d 275, 279 (Tex.Crim.App. 1982); *Bullard v. State*, 533 S.W.2d 812, 815 (Tex.Crim.App.1976). There was no evidence the loss was less than $200.00, and there was some evidence, including undisputed evidence introduced by the appellant, admitted without objection to show a loss of over $200.00. *Bullard*, at 815. Such evidence must be viewed in the light most favorable to the verdict. *Wilson v. State*, 654 S.W.2d 465, 468 (Tex.Crim.App.1983). Ground of error three is overruled.

■■ Appellant's fourth ground of error complains that the trial court erred in excluding testimony of two witnesses regarding her reputation for truth and veracity at the punishment phase of trial. The court did allow each of these witnesses to testify to appellant's reputation as a peaceful and law abiding citizen.

Appellant did not ask to retire the jury so the court could hear the proffered testimony, as provided for in art. 40.09, sec. 6(d)(1), Tex.Code Crim.Pro.Ann. (Vernon Supp. 1982–1983). Since the record contains no formal bill of exception as to what the excluded testimony would show, the complaint is not properly before this Court for review. *Baldwin v. State*, 538 S.W.2d 109, 113 (Tex.Crim.App.1976); *Brown v. State*, 438 S.W.2d 926, 928 (Tex.Crim.App.1969).

Appellant's fourth ground of error is overruled.

■ By ground of error five, appellant alleges that "material, perjured testimony" was used to return the indictment, and that her conviction is void. She claims that the indictment against her resulted from a probable cause affidavit signed by Officer M.L. Quast of the Houston Police Department Criminal Intelligence Division. Officer Quast stated under oath, as a basis for the arrest warrant, that complaining witness James Tedford, an employee of EXXON, USA, in charge of building repair, told him appellant did not have permission to put paint on the building. At trial, Quast testified that he did not recall ever having spoken to Tedford before trial.

Appellant's argument is without merit. There is no evidence that Quast testified before the grand jury which returned either the first indictment, later set aside for failure to include the address of the building, or the reindictment. While the record shows that appellant filed a motion to require endorsement of the names of grand jury witnesses on the indictment, it does not indicate that any ruling was obtained by the appellant on that motion. Appellant has not shown there was any perjury by Officer Quast before the grand jury. Further, it was clear from the testimony of Tedford at trial that he did talk to someone at the police department concerning the incident. Appellant's fifth ground of error is overruled.

Appellant's sixth ground of error challenges the court's denial of her motion for mistrial after the prosecution's attempt to impeach her with proof of an extraneous offense.

During direct examination by her own attorney at the guilt or innocence phase, appellant referred to other occasions when she had been arrested and taken to jail. On cross-examination she testified, over objection, that she had been arrested seven times in the past four to five years; that five of the cases had been dismissed; that she had pleaded no contest to one charge; that she was presently appealing a conviction by a jury; and that none of the charges had ever involved an offense for which incarceration was a potential penalty.

The prosecutor then asked whether it was true that she was arrested for another offense on May 1, 1981, and was served the warrant for the present offense while in jail as a result of the other arrest. Appellant denied such an arrest. There was no objection by appellant's counsel to the question or answer. Later, out of the jury's presence, defense counsel moved for a curative instruction or declaration of mistrial based on the prosecutor's misconduct in asking the question. The request for a curative instruction was denied by the court because of counsel's failure to object. Counsel did not obtain a ruling on his motion for mistrial.

■ Failure to object waives any error in the admission of evidence tending to show an extraneous offense. *Smith v. State*, 595 S.W.2d 120, 123 (Tex.Crim.App. 1980). There was no objection to the prosecutor's question about the extraneous offense until after the prosecutor approached the bench and the court had the jury removed. It is fundamental that a timely objection must be raised at the first opportunity. *Atwood v. State*, 537 S.W.2d 749, 752 (Tex.Crim.App.1976). A failure to object timely waives any error in the admission of evidence and presents nothing for review. *Boulware v. State*, 542 S.W.2d 677, 682 (Tex.Crim.App.1976). The objection to the prosecutor's question about the extraneous offense was not timely; the court did not err in denying appellant's requested admonition to the jury.

■ Appellant's counsel did, however, move for a mistrial at the same time he objected to the question about the extraneous offense. There was no ruling made by the trial court on this motion for mistrial and none was requested by appellant's counsel. Failure to secure an adverse ruling on this motion for mistrial preserves nothing for review. *Collection Consultants, Inc. v. State*, 556 S.W.2d 787, 794

(Tex.Crim.App.1977). Appellant's sixth ground of error is overruled.

The judgment is affirmed.

EVANS, Chief Justice, dissenting.

I agree with the majority that the trial court did not abuse its discretion in controlling the time and general scope of the voir dire examination. However, I believe the trial court did exceed the bounds of its discretion when it refused to permit appellant's counsel to examine prospective jurors about the content of the painted message.

The record shows that the appellant's counsel made an adequate explanation to the trial court of the purpose of his line of questioning, and that notwithstanding such explanation, the trial court, on two separate occasions, prevented him from asking the jury panel whether they would be improperly influenced by the contents of the painted message:

> All right. Now, I think the evidence is also going to show that the painting on the side of the Exxon Building was not just a big blob of paint. I think it's going to show that the paint was a written message. And the reason I want to ask people this is I want to know what influence the contents of that written message on the side of the Exxon Building would have on your deliberations if your're selected as a juror in this case. I think the evidence is going to show that the—
>
> MR. CARLSON: Objection, Your Honor; going into the facts of the case on voir dire.
>
> THE COURT: Sustained.
>
> MR. VAN SLYKE: Your Honor, could I approach the bench?
>
> THE COURT: Yes, sir.
>
> (Whereupon the following proceedings were had out of the hearing of the jury panel:)
>
> MR. VAN SLYKE: Your Honor, if I could, I think it's necessary for us to briefly ask the jury about their attitude as to what it was that was painted on the side of the Exxon Building. We have

every reason to believe that. As a matter of fact, that is one of the theories of our case, Your Honor—that the State's witnesses are biased or prejudiced; that their testimony against our client will not be truthful; that their motivation for testifying untruthfully will be that they disagree with the content of the political message on the side of the building and they also disagree with the client's political feelings and philosophy. The slogan on the side of the building was a slogan denouncing the red, white, and blue flag of the United States and discouraging people to fly the red, white, and blue flag on May Day; that our client is a supporter of the Revolutionary Communist Party; that this is a very sensitive issue that will come out in the evidence. And I think we're entitled to know if the jurors have a bias or prejudice as to the content of the message.

> THE COURT: Is that all?
>
> MR. VAN SLYKE: Yes, Your Honor.
>
> MR. CARLSON: May I respond, Your Honor?
>
> THE COURT: Yes, sir.
>
> MR. CARLSON: Ms. Sullivan is not on trial for what she painted on the building but for the fact that she painted—not the content of what was written there but the fact that she wrote it there in spray paint. I don't see any need to go into, during voir dire, her political affiliations with the jurors, to this point, know nothing about the facts of the case other than it was criminal mischief because of the painting on the side of the building. I don't think it's necessary they know any more than that, because, as I say, Judge, she's being tried for the act of writing and not the content. And I would urge that the Court not allow Mr. Van Slyke to go into her political affiliations at this point.
>
> MR. VAN SYLKE: Your Honor, it's my understanding, furthermore, that the State did call Officer Blair as a witness to authenticate a photograph of the slogan, which will be introduced into evidence, and that the photograph will show

that the slogan printed on the side of the Exxon Building was, "RED, WHITE, & BLUE—WE SPIT ON YOU! FLY THE RED FLAG MAY 1." And the content of that photograph could reasonably influence the emotions and opinions of the jurors. And I think we're entitled to know if that photograph and the content of that message would be so highly prejudicial or emotional that a person might not be able to sit in judgment on the case, Your Honor, without having that influence their decision on deliberations as to Ms. Sullivan.

THE COURT: Motion is overruled.

(Whereupon the following proceedings were had in the hearing of the jury panel:)

MR. VAN SLYKE: I think some of the evidence in this case will be a photograph of the painting on the side of the Exxon Building that will depict what was painted on the side of the Exxon Building there. Now, if that photograph showed what was painted on the side of the Exxon Building—

MR. CARLSON: I would object once again, Your Honor, to going into the facts of the case on voir dire.

THE COURT: Let's let him finish the question first.

MR. VAN SLYKE: If that photograph showed what was painted on the side of Exxon Building was "RED, WHITE & BLUE—WE SPIT ON YOU!"—

MR. CARLSON: Objection, Your Honor.

THE COURT: Mr. Van Slyke, approach the bench.

(Whereupon the following proceedings were had out of the hearing of the jury panel:)

THE COURT: Mr. Van Slyke, I have just ruled on this matter, and I thought you understood my ruling.

MR. VAN SLYKE: Your Honor, I did as to the message but not as to—

THE COURT: I don't want this message given to the jury, and I'm telling you that now. Now, you can do whatever you like as part of pursuing your case,

but that's the way it's going to be. And let's not do it.

MR. VAN SLYKE: Your Honor, I do except to the Court's ruling.

THE COURT: All right. You'll object. It's in the record.

The appellant never contested the fact that the message was painted on the building, and as the state pointed out in its argument, the content of the message had nothing whatsoever to do with the offense charged. Thus, the only question concerning the text of the message was whether it was of such a nature as to improperly prejudice the prospective jurors against the accused.

In *Ransom v. State*, 630 S.W.2d 904 (Tex.App.—Amarillo 1982, no pet.), a similar situation was presented. There, on voir dire examination, the trial court permitted the prosecutor to outline some of the pre-arrest activities of the law enforcement officers, and to ask if any juror would be so offended by such conduct that he or she would find appellant not guilty "regardless of whether or not the state had met its burden." On appeal, the defendant contended that a member of the jury panel was erroneously excused "after the state had improperly committed her to the specific fact situation that existed in this case." 630 S.W.2d 904. Affirming the trial court's judgment, the Court of Appeals concluded that the state's questions did not constitute an improper attempt to commit the juror to a specific set of facts, concluding that the state "was simply attempting to ascertain the jury panel's reaction to the events preceding the arrest." There, as in the instant case, the subject matter of the inquiry was not an issue in the case, and it related only to the question of whether the jurors would be improperly influenced in their attitude toward the accused and the prosecution.

Thus, there is authority which suggests that if the message in the instant case had been in the nature of a national patriotic slogan, the prosecutor would have been entitled to inquire whether the content of the message would unduly prejudice any prospective juror in favor of the accused.

*Ransom, supra.* On this same rationale, the appellant's counsel in the instant case, should have been permitted to examine the prospective jurors regarding any prejudice they might have because of the content of the message in question.

It seems to me that the circumstances of the case at bar are analogous to those in *Abron v. State,* 523 S.W.2d 405, 409 (Tex. Crim.App.1975). In that case, the defendant's counsel sought to ask questions of the jury panel as to whether a prospective juror would be prejudiced by the fact that the defendant was black and the complaining witness was a white woman. This inquiry would obviously have assumed the existence of facts, i.e., the race of the victim, that would normally be developed during the course of trial. Concluding that the trial court abused its discretion in refusing to permit defendant's counsel to make such inquiry of the jury panel, the Court of Criminal Appeals found that the answers to such questions were valuable to the defendant because they could have furnished a basis for the intelligent exercise of his peremptory challenges, and that deprivation of such valid right necessitated a reversal of the case. 523 S.W.2d at 409. In a concurring opinion, Judge Morrison set forth the trial court's stated reasoning for its ruling. The trial court stated that it had instructed defendant's counsel not to predicate his questions with phrases such as "if the evidence should show," thereby setting up different fact situations and asking the jurors to compare them, and whether the jurors would give certain punishment if certain facts were shown to be true. *Id.* at 409. Thus, the trial court in *Abron* obviously considered, albeit erroneously, that appellant's inquiry was an attempt to commit the venire to a course of conduct based upon a specific set of facts. In the instant case, the appellant's counsel quite adequately explained the purpose of his inquiry. As a predicate to his questions, he advised the court that the state had called a witness to authenticate a photograph of the slogan painted on the wall and that he needed to let the prospective jurors know of the content of the slogan in order to determine whether the message itself was so "highly prejudicial or emotional" that one or more of the jurors would not be able to impartially decide the facts as presented at trial.

In my opinion, the appellant was not permitted to examine the jury panel on a matter which would have enabled him to intelligently exercise his peremptory challenges, and the denial of that right requires that we reverse the trial court's judgment and remand the cause for a new trial. *Abron v. State, supra.*