**Opinion issued April 27, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-21-00587-CR

————————————

**MICHAEL CHARLES HAMILTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1643894**

---

## MEMORANDUM OPINION

A jury convicted Appellant Michael Charles Hamilton ("Hamilton") of the first-degree felony of continuous sexual abuse of a child. He was sentenced to fifty-six years in prison. In two issues, Hamilton argues (1) the trial court erred in excluding evidence of alleged sexual abuse by two alternative suspects, and (2)

that the "ominous" presence of members of "Bikers Against Child Abuse" in the courtroom intimated the jury, violating his right to a fair trial.

We affirm.

## Background

In 2015, Hamilton moved into the apartment where M.P. ("Mary"), her mother, A.H. ("Mother"), and her brother D.W. ("David") were living.[1] Mother was the breadwinner and Hamilton was a stay-at-home parent and disciplinarian. In December 2016, seven-year-old Mary, Mother, David, and Hamilton all moved into a house with Lynn Ann Snodgrass, Mother's mother.[2] Mother's brother, Andrew Snodgrass, also lived in the house.

Early one morning in November 2018, 9-year-old Mary told Mother that Hamilton had sexually abused her. She told Mother that she and Hamilton were in the backyard pool when he dared her to put her mouth on his penis, he made her watch as he masturbated, and he put his mouth on her vagina. Mother did not contact the police. Instead, she and Mary went for a long walk and returned to the house at around 6 a.m. Mother, who testified that Mary can be untruthful, did not believe Mary when she told her about the abuse.

Later that day, Mary's uncle, Aaron Snodgrass ("Aaron"), who heard Mary's

---

[1] To protect the identity of the minors, we use "Mary" and "David" as pseudonyms. "Mother" refers to their biological mother.

[2] At some point, Hamilton and Mother married. The record does not indicate when.

allegations of sexual abuse, took Mary to his apartment and called the police. Aaron testified that he believed Mary's story because he "could see the fear in her." The police spoke with Mary, and later that same day, Children's Protective Services ("CPS") spoke with her. Mary's father and stepmother picked her up the next day and she spent the next few months moving between her father's house and her stepmother's parents' house. A few months later Mary went to live with her godparents, with whom she lived for two months.

Ultimately, Mary went to live with Karen and Jim Bailor ("the Bailors"), who have since adopted her. By the time of trial, Mary had been living with the Bailors for three years. After Mary went to live with Karen Bailor ("Karen"), a third cousin, Mary made frequent disclosures to her about Hamilton's alleged sexual abuse. Twelve days after moving in with the Bailors, Mary told Karen that Hamilton forced her to perform oral sex on him frequently, something Mary had not disclosed to anyone before. Mary told Karen that Hamilton forced her to do it nearly every day. She told Karen that the abuse started in December 2016 and lasted until November 2018, when Mary told Mother about the abuse in the pool. Karen contacted CPS and told them what Mary said. Karen also contacted the officer investigating the case.

Mary, then 11 years old, testified at length during trial about the alleged sexual abuse and physical abuse inflicted by Hamilton. She testified that she and

3

Hamilton discussed sex a lot—such as the positions women can be in or how ejaculation works or about his sex life with her mother—and that he sometimes showed her pornographic videos. She testified that he licked her vagina that night in the backyard pool and forced her to give him oral sex. After the pool incident, he did not touch her again but made her perform oral sex frequently—more than one hundred times. He also once forced her to put an air pump up her anus. Mary testified that Hamilton disciplined her with something he made and called an "attituder," a "wooden paddle full of duct tape that had holes in it." He would "whoop" her with it as punishment when necessary. Mary testified that Hamilton hit her so many times one week that she could not sit at school because she was so bruised.

Mary spoke with numerous professionals between the time of her initial outcry and trial. Clara Rivers, a forensic interviewer for the Children's Assessment Center, testified that she interviewed Mary when she was nine years old. She said Mary told her that she was sexually abused and provided details about the abuse. She said Mary was certain as to what happened and who abused her.

Hanna Scism ("Scism"), a therapist at Children's Safe Harbor, worked with Mary and diagnosed her with post-traumatic stress disorder. Mary made disclosures to Schism about Hamilton's alleged sexual abuse. Mary and Scism had

4

forty-six sessions together. During those sessions, Mary told Scism that Hamilton put his mouth on her vagina.

Alicia Sandoval-Alexander, a nurse practitioner with Texas Children's Hospital, had a sexual assault consultation with Mary in 2018. Mary described the abuse to the nurse practitioner. Mary discussed being forced to watch pornography and Hamilton's masturbation and said that he licked her "business" once. The nurse practitioner testified that the history Mary provided was consistent with sexual abuse.

James Mulheran ("Mulheran"), a forensic interviewer/caseworker at the Children's Assessment Center for Harris County, met with the family. When he first met with Mother, Mother was dismissive and did not believe Mary's allegations. When he spoke to Mary, Mary disclosed Hamilton's alleged sexual abuse to Mulheran. Mulheran found Mary consistent and he believed her. He explained Mary was removed from her home with Mother and Hamilton because it was not a safe environment. Mulheran was concerned and feared for Mary's safety because Mother did not believe Mary and because she and Hamilton were still together. Mulheran suspected that Mother might have been in the same room at least some of the time while Hamilton assaulted Mary.

Investigator Cheyanne Velez ("Velez") works in the child abuse unit of the Harris County Sheriff's Office. Velez was the lead detective on the case. She met

with Mary, Karen, Mother, the families that had temporarily housed Mary, Mary's teachers and counselors, and CPS. She reviewed Mary's therapy, medical, school, and CPS records, and she watched an interview with Hamilton. After the interviews and her review of records, she presented everything to the district attorney's office and charges were filed against Hamilton.

Hamilton was charged with continuous sexual abuse of a child.[3] He pleaded not guilty and the case proceeded to trial.

**Evidence of Alternate Suspects**

At some time before disclosing Hamilton's alleged abuse, Mary had accused two men, Zane Smith ("Smith") and James Frattarola ("Frattarola"), of sexual assault.[4] The State sought to exclude evidence concerning the alleged assaults by Smith and Frattarola, but Hamilton argued the evidence was relevant because Mary was conflating the assaults and accusing Hamilton of abuse that had occurred at the hands of Smith or Frattarola.

On October 18, 2021, the State filed a Motion in Limine that sought to exclude:

Any reference regarding sexual misconduct or illegal acts performed by a person other than the Defendant towards or with the Complainant

---

[3]    At the time of trial, Mother was in the process of divorcing Hamilton.

[4]    According to the State's Motion in Limine, James Frattarola "was found guilty to the prior allegation made by [Mary]." Hamilton states that Frattarola was convicted of indecency with a child and that Mary was the complainant in that case.

in this case.  This includes any sexual misconduct or illegal acts performed by James Frattarola, who has already been convicted of the offense of Indecency with a Child and about whom [Mary] previously disclosed multiple acts of sexual abuse, and Zane Smith, who is deceased.

The State argued that admission of evidence of any acts by Smith or Frattarola was precluded by Texas Rules of Evidence 401, 402, and 403, and 412.[5,6]  The State requested that the parties be required to "approach and conduct a hearing outside the presence of the jury before any such evidence [was] proffered, as required under [Texas Rule of Evidence] 412."

Hamilton filed a "Motion to Admit Evidence of Prior Nonconsensual Sexual Activity of the Alleged Victim" ("Motion to Admit Evidence") in response to the State's Motion in Limine.  Hamilton requested that the trial court allow admission of evidence regarding "sexual misconduct or illegal acts performed by Zane Edward Smith and Jimmy Frattarola towards or with the complainant."  Hamilton argued the evidence was admissible because his defense "relies in significant part on the complainant being confused about which man, if any, committed the

---

[5]     Texas Rules of Evidence 401 and 402 define relevant evidence and establish the rules for the general admissibility of relevant evidence.  TEX. R. EVID. 401, 402. Rule 403 allows the trial court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."  TEX. R. EVID. 403.

[6]     Texas Rule of Evidence 412 is also known as the "Rape Shield Law," which governs the admissibility of a victim's past sexual behavior in a prosecution for sexual assault.  TEX. R. EVID. 412.  Given our disposition in this appeal, we need not determine whether Rule 412 is applicable.

continuous sexual assault made the basis" of this case.  He asserted the evidence of acts performed by Smith and Frattarola "towards or with the complainant in this case [] has considerable probative value in that it offers a plausible alternative explanation for the complainant's behavior and eventual outcry."  Hamilton argued that precluding evidence of the illegal acts performed by Smith and Frattarola would violate his Fifth and Sixth Amendment rights and his right to due course of law pursuant to the Texas Constitution.  Hamilton's Motion to Admit Evidence did not identify the witness(es) from whom Hamilton sought to elicit testimony regarding other instances of abuse, nor did it describe the evidence it sought to elicit, other than "[e]vidence of sexual misconduct or illegal acts performed by Zane Edward Smith and Jimmy Frattarola towards or with the complainant." Hamilton's Motion to Admit Evidence was apparently a request for the trial court to overrule the State's Motion in Limine as to evidence concerning Smith and Frattarola.[7]

---

[7]    In the Motion to Admit Evidence, Hamilton argued Rule 412's Rape Shield Law was inapplicable because the prior sexual activity Hamilton sought to admit was not consensual.

The trial court granted the State's Motion in Limine and denied Hamilton's Motion to Admit Evidence. The trial court's Order denying Hamilton's motion contained the following language:

___ GRANTED

___ DENIED, to which the Accused respectfully objects.

The trial court checked the "DENIED" blank and wrote on the order, "Approach the bench if you believe the State has opened the door." And on the first day of trial, the court stated:

> So, Mr. Hamilton, we have – the Court's heard your attorney's motions in limine . . . . And the State's motion in limine was granted as it relates to Defense not mentioning any prior sexual conduct between the complainant and Jimmy [Frattarola] and Zane [Smith]. Unless there's some reason the door gets opened by the State, the attorney will approach, and then the Court will rule on that issue. I think that's it.

Hamilton points to testimony during the trial where he claims the State opened the door. During Karen's direct testimony, she was asked how she would describe Mary's behavior today.

The State: What is your relationship with [Mary] today?

Karen: I'm Mom. She's really a spectacular child. She has – we have a bond. I got grown kids. And my bond with this child is tighter than my other kids. It's just something about our connection and her – her zest for life and optimistic attitude, and she cares about people. She has a huge heart. She has a fun sense of humor. She's hilarious. We – we have a very wonderful, loving bond.

9

> And I talk to her.  I'm about to talk to her –[8]
>
> . . .

The State:    And you mentioned when you first had [Mary], she had some anger issues, maybe some behavior issues.  How would you describe her behavior today?

Hamilton's counsel objected to the State's question.

DuPont:[9]    Your Honor, objection.  We're getting into victim impact at this point.

The Court.    Approach the bench.

(Bench conference)

The State:    Shows change of behavior when she's become abused.

The Court:    How is that relevant?

The State:    Because it's showing –

DuPont:    Let me tell you something, Judge.  This entire line of questioning is opening up a need for me to bring in, at the very minimum, who, in fact, sexually abused [Mary] and [is] in prison for this conduct and PTSD, all these things [Karen] is talking about contributed to this.

The State:    Two years.

The Court:    Because all this?  So I would have to agree.

DuPont:    All of that can be trauma.

---

[8]    Hamilton's trial counsel objected to this testimony as narrative and the trial court sustained the objection.

[9]    Todd DuPont was Hamilton's trial counsel.

The Court: What was the objection again? I can't hear you.

DuPont: Should we take the jury out?

The Court: Well, what was the issue?

DuPont: I want to be able to cross her about this dude.

The Court: That wasn't the reason I made you approach.

DuPont: No. The initial reason I said.

The Court: Oh, okay. So now you're saying it goes towards because she said someone abused her, so. What's the State's response? Because he has a point, if that's your angle.

The State: Well, the change in the behavior, is that what you're asking?

The Court: Right.

The State: [Hamilton] abusing her and two years after. The other guy was abusing her. And that's changed –

The Court: I don't know because you don't have a pinpoint. So how are you going to show, I mean, that's kind of what I don't know, when was this first period of time? Do you know when that was?

The State: Gradual change.

The Court: When was that?

The State: When did she start behaving –

The Court: No. Remove the jury.

(End of bench conference.)

11

When the jury returned, Karen was not asked about Smith or Frattarola.[10]

Hamilton points out that during trial, Mary also made two apparent inadvertent allusions to previous assaults by other people. First, while testifying about Hamilton forcing her to perform oral sex in the pool, the following exchange occurred between the State prosecutor and Mary:

The State:   Okay. What was going through your head as he was doing this?

Mary:        Well, it wasn't the first time it's happened. So it was very scary 'cause I knew – I knew the gist of it. Like I knew it wasn't the right thing, but at that age, I thought I couldn't do anything, so I just went along with it.

The State:   You're saying that's not the first time that he had made you do that?

Mary:        No. That's not the first time it's happened. Not just –

The State:   Oh, I see.

Mary:        – him.

And soon after, the following transpired:

The State:   Looking back, do you think you know why you didn't tell [Mother] at that time?

Mary:        Yes, sir.

The State:   Why do you think that is?

Mary:        I thought maybe because – I think that I was a child, and he was the adult. And there wasn't really anything I

_____

[10]   No witness testified at trial about Smith or Frattarola.

12

could do because the first time it happened when I told her, she didn't really take that much responsibility. So I thought it wouldn't really matter because it will still happen.

A few minutes after Mary's testimony, the following exchange occurred between the trial court and counsel outside the presence of the jury:

DuPont: Well, I mean, it seems to me [Mary's] opened the door to, at least, the prior incident of sexual abuse.

The Court: So he wants to follow up with the statement when she said not–when I say, "she," the complainant, in the case. You asked her a question about him–her having to, I guess, put her mouth on his privates. And she made a statement about it, and you tried to clarify it. And she said–to summarize it, she's basically, saying not him, when it happened before. It was somebody else, is, basically, the implication that she made–that she stated. Do you have that? Can we go over that? So I can hear exactly what she said.

Reporter: Yes, Judge. Let me find it.

DuPont: And there should be a second one behind it. I think there are two in the same area. The way I have it in quotes is, it's not the first time it's happened.

(Discussion off the record)

The jury then returned and the State continued with its direct examination of Mary.

There was no mention of Smith or Frattarola during Mary's cross-examination.

**Other Witnesses**

Dr. Whitney Crowson ("Dr. Crowson"), a staff psychologist at the Children's Assessment Center, observed the trial. She had not met Mary before

13

trial, and she testified only as to opinions she formed while watching Mary testify. She testified that Mary's delayed or partial outcry may have been attributed to fear and anxiety, which she observed while Mary testified. In Dr. Crowson's opinion, Hamilton groomed Mary. Dr. Crowson said it is possible Mary only partially disclosed the abuse at first so she could gauge others' reaction, to see if she would be believed. She also may have engaged in a delayed or partial outcry because she felt like she was to blame for the behavior and felt ashamed. Dr. Crowson testified that Mary's recollection of events was not unusual. Mary first described anal penetration on the stand, and Dr. Crowson said it is not uncommon for a child to get on the stand and then share new details of abuse. Dr. Crowson testified that Mary did not seem confused while testifying and gave age-appropriate details about the abuse.

The defense called seven character witnesses, all of whom testified that Hamilton treats children morally and ethically. Those who knew Mary testified that she is untruthful.

**Verdict and Punishment**

During Mary's testimony and closing arguments, member of "Bikers Against Child Abuse" watched the proceedings in the courtroom.[11] There was no

---

[11] Bikers Against Child Abuse is a non-profit, tax-exempt organization "that exists to provide aid, comfort, safety, and support for children that have been sexually,

14

objection to their presence. After three days of testimony, the jury found Hamilton guilty. The court assessed his punishment at fifty-six years' incarceration in the Texas Department of Criminal Justice Institutional Division. This appeal ensued.

## Discussion

In his first issue, Hamilton argues the trial court erred in excluding evidence of Mary's allegations of sexual abuse by Smith and Frattarola which, according to Hamilton, occurred prior to and during the time Hamilton allegedly abused Mary. In the second issue, Hamilton complains of the presence of "Bikers Against Child Abuse" in the courtroom during Mary's testimony, during closing arguments, and during Mary's victim impact statement at the punishment phase of trial. The State argues that Hamilton failed to preserve error with respect to both issues.

### A.     Standard of Review & Applicable Law

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002); *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *Wilson v. State*, 473 S.W.3d 889, 899 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). In reviewing for an abuse of discretion, we will not disturb the trial court's ruling unless it is outside "the zone of reasonable disagreement." *Salazar v. State*, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001); *see also Taylor v. State*, 268 S.W.3d

physically, and emotionally abused." https://bacaworld.org/faqs/ (last viewed on February 1, 2023).

15

571, 579 (Tex. Crim. App. 2008) (stating trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree") (citing *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003)).

Texas Rule of Appellate Procedure 33.1 governs preservation of error on appeal.  It states:

(a) *In General.* As a prerequisite to presenting a complaint for appellate review, the record must show that:

(1)   the complaint was made to the trial court by a timely request, objection, or motion that:

(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

(B) complied with the requirements of the Texas Rules of Evidence or the Texas Rules of Civil or Appellate Procedure; and

(2) the trial court:

(A) ruled on the request, objection, or motion, either expressly or implicitly; or

(B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

TEX. R. APP. P. 33.1(a).

16

**B.     Preservation of Error**

Hamilton argues that he should have been allowed to introduce evidence "about [Smith and Frattarola,] two alternate suspects[,] as well as [Mary's] similar allegations of sexual abuse against these suspects. Further, the defense should have been permitted to cross examine the State's witnesses about these suspects and allegations." The State argues that Hamilton failed to preserve error because he did not "cite an adverse ruling where evidence [regarding Smith or Frattarola] was excluded."

**1.     Evidence of Alternate Suspects**

Hamilton argues that his Motion to Admit Evidence "outlined in detail the evidence the defense was seeking to introduce before the jury." He states that the Motion to Admit Evidence preserved error about Smith and Frattarola because it described two prior instances of Mary's nonconsensual sexual activity with both men and provided legal arguments as to why the State's Motion in Limine should be overruled and why exclusion of evidence concerning the alleged prior abuse by Smith and Frattarola violated Hamilton's constitutional rights.

Hamilton's Motion to Exclude Evidence did not preserve error. His motion was merely a response to the State's Motion in Limine, which argued that evidence

of alleged abuse by Smith or Frattarola should be excluded.[12]  Indeed, the Motion to Admit Evidence specifically requested that the trial court overrule the State's Motion in Limine as to testimony regarding Smith and Frattarola.  As the State correctly notes, motions in limine and other preliminary rulings on the admission or exclusion of evidence are not appealable.  "A trial judge's grant or denial of a motion *in limine* is a preliminary ruling only and normally preserves nothing for appellate review."  *Geuder v. State*, 115 S.W.3d 11, 14–15 (Tex. Crim. App. 2003) (emphasis in original); *see also Thierry v. State*, 288 S.W.3d 80, 87 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("It is axiomatic that motions in limine do not preserve error.") (quoting *Harnett v. State,* 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet. ref'd)).  A motion in limine "is not a ruling that excludes evidence; rather, it merely requires the parties to approach the trial court for a definitive ruling before attempting to put on evidence within the scope of the motion in limine order."  *Thierry*, 288 S.W.3d at 86–87 (citing *Bobo v. State*, 757 S.W.2d 58, 61 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd)); *see also Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998) ("[W]e have held that a ruling on a State's motion in limine that excludes defense evidence is subject to

---

[12]   The State's Motion in Limine was filed on October 18, 2021.  The order granting the State's Motion in Limine, Hamilton's Motion to Admit Evidence, and the order denying the Motion to Admit Evidence are dated October 19, 2021.  The order in which the pleadings were filed that day is unclear.

reconsideration throughout trial and that to preserve error an offer of the evidence must be made at trial.").[13]

Hamilton's Motion to Admit Evidence alone does not preserve error. *See Ransom v. State*, 630 S.W.2d 904, 907 (Tex. App.—Amarillo 1982, no pet.) ("The specific activity to which the motion [in limine] is directed must actually be attempted and either permitted or prohibited by the court, and a proper record thereof made, before there is anything for the appellate court to review."); *see also Norman v. State*, 523 S.W.2d 669, 670–71 (Tex. Crim. App. 1975) (holding nothing was preserved for review where trial court granted state's motion in limine and instructed defense to offer evidence outside jury's presence, but record did "not reflect a tender and exclusion of particular evidence"). In *Norman*, the Court of Criminal Appeals held that the granting of a motion in limine does not "constitute the basis for complaint on appeal, particularly since such disposition of the motion is subject to reconsideration upon tender of admissible evidence[.]" *Id.* at 671. Similarly, the order denying Hamilton's Motion to Admit Evidence was subject to reconsideration per the trial court's instruction in the order for the parties

---

[13]     The order denying Hamilton's Motion to Admit Evidence states that Hamilton should "[a]pproach the bench if you believe the State has opened the door." And before trial testimony began, the court stated:

> And the State's motion in limine was granted as it relates to Defense not mentioning any prior sexual conduct between the complainant and Jimmy [Frattarola] and Zane [Smith]. Unless there's some reason the door gets opened by the State, the attorney will approach, and then the Court will rule on that issue.

19

to approach the bench if Hamilton believed the State opened the door to the admissibility of evidence of Mary's alleged prior abuse. Thus, Hamilton's Motion to Admit Evidence did not preserve error. *See Duff-Smith v. State*, 685 S.W.2d 26, 36 (Tex. Crim. App. 1985) (noting general rule that "the litigation of a pretrial motion does not automatically preserve error").[14]

## 2. Implicit Rulings

Hamilton also argues that he requested that evidence about Smith and Frattarola be admitted during trial but that his request was denied. He claims the trial court implicitly ruled on his objections when testimony regarding abuse by Smith and Frattarola was excluded. The record does not support Hamilton's argument or reflect any objection or ruling from the court on these particular issues.

Hamilton first points to a bench conference during Karen's testimony as an attempt by him to seek admission of evidence of Smith and Frattarola's alleged prior sexual abuse of Mary. Karen was asked by the State:

> The State: And you mentioned when you first had [Mary], she had some anger issues, maybe some behavior issues. How would you describe her behavior today?
>
> Karen: She –

---

[14] Hamilton concedes that the granting or denying "of a motion in limine or preliminary ruling, without more, does not preserve issues for review."

DuPont:      Your Honor, objection.  We're getting into victim impact at this point.

The Court:   Approach the bench.

(Bench conference)

The State:   Shows change of behavior when she's become abused.

The Court:   How is that relevant?

The State:   Because it's showing –

DuPont:      Let me tell you something, Judge.  This entire line of questioning is opening up a need for me to bring in, at the very minimum, who, in fact, sexually abused this woman [Mary] and [is] in prison for this conduct and PTSD, all these things this lady [Karen] is talking about contributed to this.

The State:   Two years.

The Court:   Because all this?  So I would have to agree.

DuPont:      All of that can be trauma.

The Court:   What was the objection again? I can't hear you.

DuPont:      Should we take the jury out?

The Court:   Well, what was the issue?

DuPont:      I want to be able to cross her about this dude.

The Court:   That wasn't the reason I made you approach.

DuPont:      No.  The initial reason I said.

The Court:   Oh, okay.  So now you're saying it goes towards because she said someone abused her, so.  What's the State's

21

response?  Because he has a point, if that's your angle.

The State:  Well, the change in the behavior, is that what you're asking?

The Court:  Right.

The State:  Michael abusing her and two years after.  The other guy was abusing her.  And that's changed –

The Court:  I don't know because you don't have a pinpoint.  So how are you going to show, I mean, that's kind of what I don't know, when was this first period of time?  Do you know when that was?

The State:  Gradual change.

The Court:  When was that?

The State:  When did she start behaving –

The Court:  No.  Remove the jury.

(End of bench conference.)

Hamilton argues that "[w]hile the trial court did not expressly rule on the record following defense counsel's objection, the trial court instead goes off the record, returns, and the remainder of [Karen's] testimony makes no mention of either of the two prior nonconsensual sexual acts."  Thus, he argues, "it can reasonably be inferred that the trial court overruled defense counsel's objection and barred admission of the two prior nonconsensual sexual acts for the remainder of [Karen's] cross-examination."

Without an objection on the challenged issue on appeal, there can be no ruling and nothing is preserved for our review. "A failure to object timely waives any error in the admission of evidence and presents nothing for review." *Sullivan v. State*, 678 S.W.2d 162, 169 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd) (citing *Boulware v. State*, 542 S.W.2d 677, 682 (Tex. Crim. App. 1976); TEX. R. APP. P. 33.1. During Karen's direct testimony, Hamilton did not object to the exclusion of evidence concerning Smith and Frattarola. Hamilton's articulated objection at best was that Karen's testimony was getting into "victim-impact" evidence,[15] prompting the trial court to call for a bench conference. During the bench conference, Hamilton argued that "[t]his entire line of questioning is opening up a need . . . to bring in, at the very minimum, who, in fact, sexually abused [Mary] and [is] in prison for this conduct and PTSD . . . ." Even were we to construe this explanation as an objection to the exclusion of evidence regarding Smith and Frattarola, Hamilton waived the issue because he did not secure a ruling from the trial court on any purported objection.

At some point during the bench conference, the parties went off the record. Subsequently, trial resumed and the State continued with its direct examination of

---

[15] "'Victim-impact' evidence . . . is evidence concerning the effect of the crime after the crime occurs." *Reynolds v. State*, 371 S.W.3d 511, 525 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Relevant victim-impact evidence is admissible during the punishment phase of a trial. *Aguilar v. State*, No. 01-15-00972-CR, 2017 WL 3634248, at *14 (Tex. App.—Houston [1st Dist.] Aug. 24, 2017, pet. ref'd) (mem. op.).

23

Karen. While Hamilton acknowledges there was no express ruling on his objection, he requests that we infer an implicit denial of his objection because after the parties resumed their questioning of Karen, there was no discussion of Smith and Frattarola. But the fact that the trial court went off the record "and the remainder of [Karen's] testimony [made] no mention of either of the two prior nonconsensual sexual acts" does not lead to an inference that the trial court implicitly overruled Hamilton's objection.

Absent an adverse ruling that appears on the record, we cannot speculate as to the trial court's rulings on the parties' discussions off the record. *See Darty v. State*, 709 S.W.2d 652, 655 (Tex. Crim. App. 1986) ("The conversation at the bench could have been a discussion of any number of things, including . . . a withdrawal of appellant's objection. We decline to speculate on the subject of that conversation.").[16] Thus, even if Hamilton lodged a proper objection, he waived the issue on appeal because there was no explicit ruling on his objection, and the fact that Karen's testimony resumed after the parties' bench conference concluded without mention of Smith and Frattarola is not tantamount to an implicit ruling overruling Hamilton's objection. *See, e.g., Grayson v. State*, 192 S.W.3d 790, 793

---

[16] In *Darty v. State*, 709 S.W.2d 652, 653 (Tex. Crim. App. 1986), the issue was "whether the admission of evidence by the trial court over objection implies that the objection is overruled, and error is preserved, when no precise ruling by the trial court appears in the record." The Court held that "absent an adverse ruling that appears of record, such an admission of evidence does not preserve error."

24

(Tex. App.—Houston [1st Dist.] 2006, no pet.) (objection to improper jury argument waived and no implicit ruling was made when court said, "Let's proceed" with argument); *Murillo v. State*, 839 S.W.2d 485, 492–93 (Tex. App.—El Paso 1992, no pet.) (stating "You may proceed" in response to objection to admission of extraneous offense evidence during questioning of witness "was an attempt to ignore or avoid the objection and did not constitute a conclusory or definite ruling adverse to the objection" and therefore error was not preserved)[17]; *but see Rey v. State*, 897 S.W.2d 333, 336–37 (Tex. Crim. App. 1995) (holding that record established implied ruling when defendant twice requested court to rule, then stated on record that court had denied his motion, and neither court nor State corrected statement); *Dupree v. State*, Nos. 05-00-00132-CR and 05-00-00133-CR, 2001 WL 328157, at *3 (Tex. App.—Dallas Apr. 5, 2001, no pet.) (mem. op., not designated for publication) (holding implicit ruling denying mistrial was demonstrated when court told party to call its next witness).

Hamilton next contends error was preserved during Mary's cross-examination because "it can reasonably be inferred that the trial court overruled defense counsel's objection and offer of evidence, and barred admission of the two prior nonconsensual sexual acts[.]" Hamilton argues there is "no ambiguity" with

---

[17]     *See Welch v. State*, No. 01-18-00223-CR, 2019 WL 1940640, at *6 (Tex. App.—Houston [1st Dist.] May 2, 2019, no pet.) (mem. op., not designated for publication) ("'Proceed,' does not constitute a ruling, either express or implicit, on appellant's objection.").

respect to his objection during the following exchange, which arose in response to Mary's "explicit reference to suffering sexual abuse by individuals other than Hamilton:"

DuPont: Well, I mean, it seems to me she's [Mary] opened the door to, at least, the prior incident of sexual abuse.

The Court: So he wants to follow up with the statement when she said not–when I say, "she," the complainant, in the case. You asked her a question about him–her having to, I guess, put her mouth on his privates. And she made a statement about it, and you tried to clarify it. And she said–to summarize it, she's basically, saying not him, when it happened before. It was somebody else, is, basically, the implication that she made–that she stated.

Do you have that? Can we go over that? So I can hear exactly what she said.

Reporter: Yes, Judge. Let me find it.

DuPont: And there should be a second one behind it. I think there are two in the same area. The way I have it in quotes is, it's not the first time it's happened.

(Discussion off the record)

Even if we accept this exchange as a proper objection to Hamilton's inability to question Mary about the "prior incident of sexual abuse," there was no ruling, implicit or explicit, on any such objection. Thus, any argument on appeal was waived. TEX. R. APP. P. 33.1.

Hamilton quotes *Trevino v. City of Pearland*, 531 S.W.3d 290 (Tex. App.— Houston [14th Dist.] 2017, no pet.) in support of his argument that the trial court

implicitly overruled his objection. The court in *Trevino* stated, "An implicit overruling is one that, though unspoken, reasonably can be inferred from something else." *Id.* at 299. Without further elaboration, Hamilton concludes that he preserved error because there was an implicit ruling on his purported objection. Hamilton's reliance on *Trevino* is misplaced.

In *Trevino*, the parties agreed to try the issue of attorney's fees in a bench trial. *Id.* at 295. Before the bench trial commenced, the Trevinos filed a motion to exclude the City of Pearland's evidence of attorney's fees, and during the trial, they objected to the admissibility of the City's evidence on attorney's fees. *Id.* The trial court awarded the City of Pearland attorney's fees in a final judgment. *Id.* On appeal, the Trevinos argued, among other things, that the trial court erred by awarding attorney's fees to the City because the only evidence supporting the award should have been excluded. *Id.* at 299. The City responded that the Trevinos had waived the issue for review because they had not secured a ruling from the trial court on their motion to exclude or on their objections. *Id.*

As is the case here, the trial court did not expressly rule on the Trevinos' motion or objections.[18] Nonetheless, the Trevinos argued that by awarding the

---

[18] The trial court did not make an express ruling on the Trevinos' motion or objections. During the bench trial on attorneys' fees, the trial court indicated it would take the Trevinos' objections under advisement. *Trevino v. City of Pearland*, 531 S.W.3d 290, 299 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

City attorney's fees in the final judgment, the trial court had implicitly denied their motion to exclude the City's evidence on attorney's fees and overruled their objections. *Id.* at 300. The court of appeals disagreed, holding that because the Trevinos had not secured a ruling from the trial court, they had waived their objections. *Id.* The court held it was "not reasonable to conclude that the trial court sustained or overruled the objections or granted or denied the motion to exclude based on the trial court's judgment on the merits." *Id.* We similarly conclude it is not reasonable to conclude that the trial court implicitly overruled Hamilton's objections to the exclusion of alternate suspect evidence based on his exchanges with the trial court and Mary's or Karen's testimony following such exchanges.

Finally, Hamilton argues that he "was barred" during Dr. Crowson's cross-examination from "discussing the prior allegations of sexual abuse" and how Mary's trauma symptoms could be related to sexual abuse perpetrated by people other than Hamilton. But Hamilton did not seek to admit evidence while Dr. Crowson was testifying and the trial court did not issue any adverse evidentiary rulings during her cross-examination.[19] This argument thus lacks merit. *See Ramirez v. State*, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991) ("To preserve error

---

[19] The judge entertained a single objection during Dr. Crowson's cross-examination. That occurred when she was asked whether she knew anything about this case and the judge sustained an objection as "asked and answered."

28

for review a defendant must receive an adverse ruling on his objection."); *see also Sullivan*, 678 S.W.2d at 169.

### 3. Constitutional Challenges

Hamilton argues that the trial court's exclusion of evidence regarding Mary's alleged abuse by Smith and Frattarola violated his constitutional right "to be confronted with the witnesses against him." *See* U.S. CONST. amend. VI; *see also* U.S. CONST. amend. XIV. He states that the trial court's exclusion of alternate suspect testimony regarding the previous abuse violated his due process rights to present a "vital defensive theory" and his right to cross examine the State's witnesses. Hamilton contends the trial court's exclusion of testimony regarding the prior abuse "thwarted [his] defensive theory of demonstrating to the jury that [Mary] was familiar with the protocol of successfully alleging sexual abuse as she had in two previous instances, and that she was using that knowledge to eradicate Hamilton." He argues that his confrontation rights were violated because he was prevented "from cross-examining a witness concerning possible motives, bias, and prejudice to such extent that he could not present a vital defensive theory."

As noted above, Hamilton's Motion to Exclude Evidence did not preserve error. Therefore, any constitutional arguments in the Motion to Exclude Evidence do not preserve error. Moreover, the record does not reflect that Hamilton made a constitutional argument in the trial court when he claims he objected to his

29

inability to cross-examine Karen or Mary about Smith or Frattarola. That is, he "did not argue that the Confrontation Clause demanded admission of the evidence." *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005). Having failed to make a constitutional argument during trial, he is precluded from raising it on appeal. *Id.* at 179-80[20]; *see also Golliday v. State*, 560 S.W.3d 664, 671 (Tex. Crim. App. 2018) ("Appellant did not clearly articulate a constitutional basis supporting the admission of the excluded evidence at trial. Consequently, he did not preserve a constitutional claim for appeal.").[21]

---

[20] In *Reyna v. State*, 168 S.W.3d 173, 176, 179 (Tex. Crim. App. 2005), the Court of Criminal Appeals held that Reyna satisfied the requirements of Texas Rule of Evidence 103 by making an offer of proof but failed to satisfy the error-preservation requirements of Texas Rule of Appellate Procedure 33.1. *Id.* at 177. The Court stated:

> "[B]oth Texas Rule of Appellate Procedure 33.1 and Texas Rule of Evidence 103 are 'judge-protecting' rules of error preservation. The basic principle of both rules is that of 'party responsibility.'" We recognized that "the party complaining on appeal (whether it be the State or the defendant) about a trial court's admission, exclusion, or suppression of evidence must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule or statute in question and its precise application to the evidence in question." The issue, we said, "is not whether the appealing party is the State or the defendant or whether the trial court's ruling is legally 'correct' in every sense, but whether the complaining party on appeal brought to the trial court's attention the very complaint that party is now making on appeal."

*Id.* at 177 (quoting *Martinez v. State*, 91 S.W.3d 331, 335 (Tex. Crim. App. App. 2002)).

[21] *See also Brock v. State*, 495 S.W.3d 1, 11 (Tex. App.—Waco 2016, pet. ref'd) ("Texas courts have held that points of error on appeal must correspond or

*Reyna* is instructive. In that case, the defendant ("Reyna") was charged with indecency with a child. 168 S.W.3d at 174. He sought to offer proof that the complainant had made an allegation of sexual assault and later recanted. *Id.* During an in-camera hearing, Reyna told the trial court what he would ask the complainant and other witnesses to prove his defense. *Id.* at 174–75. He argued the evidence should be admitted for "credibility" and to show "that as to prior sexual activities, that she made allegations that there were prior sexual allegations, and recanted." *Id.* at 175. The State objected and the trial court sustained the objection. *Id.* On appeal, Reyna argued he was "denied a fair and impartial trial based upon the exclusion of evidence which was exculpatory in nature" and he further argued he was denied his right to "fully cross-examine critical witnesses." *Id.* The court of appeals reversed the trial court, holding that evidence of a complainant's previous false allegations of sexual misconduct is admissible. *Id.*

The State filed a petition for discretionary review arguing that even though Reyna had only made an evidentiary argument to the trial court, the appellate court had reversed the conviction on constitutional grounds. *Id.* at 176. The State argued that because Reyna had not preserved his constitutional argument at trial, it could not support reversal on appeal. *Id.* The Court of Criminal Appeals agreed. It reversed, holding Reyna had not preserved the constitutional issue for appeal.

comport with objections and arguments made at trial.") (citing *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998)).

*Id.* at 179–80. The Court observed that although Reyna made an offer of proof and obtained a ruling from the trial court, he "did not cite to any rules of evidence, cases, or constitutional provisions" in his evidentiary proffer. *Id.* at 176, 179. The Court stated that Reyna's assertion that he wanted to offer the evidence for "credibility" indicated he was relying either on the Texas Rules of Evidence or the Confrontation Clause. *Id.* at 179. "When a defendant's [single] objection encompasses complaints under both the Texas Rules of Evidence and the Confrontation Clause, the objection is not sufficiently specific to preserve error." *Id.* (citing *Cantu v. State*, 939 S.W.2d 627, 634 (Tex. Crim. App. 1997)). The Court stated, "Because Reyna 'did not clearly articulate' that the Confrontation Clause demanded admission of the evidence, the trial judge 'never had the opportunity to rule upon' this rationale." *Id.*

*Golliday* also is illustrative. That case stemmed from a sexual assault trial in which the defendant ("Golliday") sought to cross-examine the complainant and a sexual assault nurse examiner to allow the jury to "get the whole picture of the situation." 560 S.W.3d at 665–66. Golliday questioned the complainant outside the jury's presence and sought to introduce the testimony he elicited to prove the alleged assault had been consensual sex. *Id.* at 666. The State objected to the testimony as hearsay, irrelevant, and inadmissible under Texas Rule of Evidence 404. *Id.* The court sustained the State's objections and Golliday was convicted.

*Id.* at 667. The court of appeals reversed, holding the trial court had violated Golliday's rights to confrontation and due process and to offer a defense by limiting his cross-examination of the complainant and the nurse examiner. *Id.* at 668. The Court of Criminal Appeals reversed the appellate court holding that nothing in the record reflected Golliday "properly put the trial judge on notice that he was making a Confrontation Clause argument in support of admitting the excluded evidence." *Id.* at 670. The Court stated, "Parties are not permitted to 'bootstrap a constitutional issue from the most innocuous trial objection.'" *Id.*[22]

Like Reyna and Golliday, Hamilton failed to "clearly articulate" to the trial court during trial that the Confrontation Clause or any other constitutional provision "demanded admission of the evidence" he sought to admit. *See Reyna*, 168 S.W.3d at 179 (citing *Clark v. State*, 881 S.W.2d 682, 694 (Tex. Crim. App. 1994)). The trial court thus did not have the opportunity to rule on Hamilton's constitutional arguments regarding the admissibility of evidence about Smith and Frattarola. Hamilton "did not do 'everything necessary to bring to the judge's

---

[22] The court stated in *Golliday v. State*, 560 S.W.3d 664 (Tex. Crim. App. 2018):

> While no "hyper-technical or formalistic use of words or phrases" is required in order to preserve error, the proffering party must "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it.

*Id.* at 670 (quoting *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012)).

attention the evidence rule or statute in question and its precise and proper application to the evidence in question.'" *Id.* at 179–80 (citing *Clark*, 881 S.W.2d at 694). Hamilton's constitutional arguments were waived.

We conclude Hamilton did not preserve error with respect to his inability to question Karen, Mary, or Dr. Crowson about Smith and Frattarola. The pretrial ruling on his Motion to Exclude Evidence did not preserve error, he did not properly object and secure a ruling from the trial court on his inability to question these witnesses about Smith and Frattarola, and he did not raise his constitutional challenges during trial.

We overrule Hamilton's first issue.[23]

## C. Presence of Certain Spectators

In his second issue, Hamilton argues that "a group of imposing men and women" associated with an organization called "Bikers Against Child Abuse" ("BACA") were present in the courtroom during Mary's testimony, closing arguments, and Mary's victim impact statement during the punishment phase of trial.[24] He asserts his right to a fair trial, as guaranteed by the Sixth and Fourteenth Amendment, was violated by the BACA members' presence in the courtroom. He

---

[23] Because we hold that the trial court did not rule on Hamilton's objections, we need not determine whether Hamilton made a proper offer of proof.

[24] Hamilton states that because of COVID social distancing restrictions, four jurors were seated in the jury box during trial and the remaining jurors were dispersed through the central and right side of the courtroom gallery, "in close proximity to BACA members."

states, "The pronounced labels donned by the BACA members sent a clear message that they believed abuse had in fact occurred, invading the province of the jury and depriving Hamilton of his constitutional right to an impartial jury and fair trial."

The record does not reflect that Hamilton objected to the presence of the BACA members in the courtroom during trial. Hamilton objected to the BACA members' presence for the first time in his motion for new trial. This is insufficient to preserve the issue for appeal. TEX. R. APP. P. 33.1; *see also Unkart v. State*, 400 S.W.3d 94, 98 (Tex. Crim. App. 2013) ("Most appellate complaints must be preserved by a timely request for relief at the trial level."); *Colone v. State*, 573 S.W.3d 249, 260 (Tex. Crim. App. 2019) ("A defendant may not raise a matter for the first time in a motion for new trial if he had the opportunity to raise it at trial."); *State v. Herndon*, 215 S.W.3d 901, 909 (Tex. Crim. App. 2007) (observing that if trial court denies motion for new trial, losing party must have preserved that error in trial court before he can "claim it as a basis for reversing the trial judge once he moves into the appellate court"); *Alexander v. State*, 137 S.W.3d 127, 131 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (holding defendant failed to preserve error for appellate review when he first asserted constitutional objections in motion for new trial).

Because the record reflects that Hamilton did not object to the presence of the BACA members during trial, we hold Hamilton waived his objection to their presence. We overrule Hamilton's second issue.

## Conclusion

We affirm the trial court's judgment.


Veronica Rivas-Molloy
Justice


Panel consists of Chief Justice Adams and Justices Countiss and Rivas-Molloy.

Do not publish. TEX. R. APP. P. 47.2(b).